# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

CUMMINS, INC.,                          )
                                        )
    Plaintiff,                      )
                                        )
        v.                      )          Case No.  09-cv-1096
                                        )
TAS DISTRIBUTING COMPANY, INC.,   )
                                        )
    Defendant.                      )

## O R D E R  &  O P I N I O N

This matter is before the Court on TAS'[1] Motion for Summary Judgment under the Doctrine of Res Judicata (Doc. 18).  Cummins has responded in opposition to this Motion (Doc. 20), and TAS has replied to this Response (Doc. 22).  Cummins has also filed a Motion for Leave to File a Surreply to Defendant's Reply (Doc. 23), which TAS has opposed (Doc. 24).  In addition, TAS has filed a Motion to Stay Discovery Pending Resolution of the instant Motion for Summary Judgment.  (Doc. 26).  For the reasons stated below, TAS' Motion for Summary Judgment is granted, Cummins' Motion for Leave to File a Surreply is denied, and TAS' Motion to Stay Discovery is denied as moot.

### BACKGROUND

In 1997, TAS and Cummins entered into a License Agreement, a Master Agreement, and a Consulting Services Agreement.  The License Agreement granted Cummins a license to use certain TAS technology, subject to certain reserved rights,

---

[1]     Because this is the third related case in this Court between these two parties, the Court will refer to Plaintiff as TAS, and to Defendant as Cummins.

and set out royalty and payment terms.   This TAS technology included two technologies that are patented as U.S. Patent No. 5,072,703 (the "'703 Patent") which issued on December 17, 1991, and is entitled "Apparatus For The Automatic Starting, Running, And Stopping Of An Internal Combustion Engine," and U.S. Patent No. 5,222,469 (the "'469 Patent") which issued on June 29, 1993, and is entitled "Apparatus For Monitoring An Internal Combustion Engine Of A Vehicle." TAS' Temp-a-Start and Temp-a-Stop systems incorporate these technologies.

In 2003, TAS filed suit against Cummins, alleging that Cummins had violated the License Agreement by failing to adequately market the technologies as required in the License Agreement; this case has become known as <u>TAS I</u>.   (Case No. 03-cv-1026).   Cummins counterclaimed, alleging that its obligation to pay royalties under the License Agreement expired on March 31, 2003.  This Court, on January 21, 2005, granted Cummins' Motion for Summary Judgment, finding that, though genuine issues of material fact existed as to whether Cummins performed its obligations under the License Agreement, TAS had failed to prove damages. (<u>TAS I</u>, 03-cv-1026, Doc. 36).  In that same Opinion, the Court partially granted and partially denied TAS' Motion for Partial Summary Judgment, in ruling that Cummins had an obligation extending beyond March 31, 2003, to make per-unit royalty payments for sales of products embodying TAS technology.   (<u>TAS I</u>, 03-cv-1026, Doc. 36).  These determinations were affirmed by the Seventh Circuit.  <u>TAS Distributing Company, Inc. v. Cummins Engine Company, Inc.</u>, 491 F.3d 625 (7th Cir. 2007).

2

A second case was filed against Cummins by TAS on May 31, 2007, in this Court; it is known as <u>TAS II</u>.  (Case No. 07-cv-1141).  This suit, which is currently pending, alleges that Cummins has breached the License Agreement, in that it allegedly "failed to pay royalties to TAS" for TAS technology allegedly embodied in Cummins' products, and "has further failed…to provide TAS with the monthly reports of sales of products called for in the License Agreement."  (<u>TAS II</u>, 07-cv-1141, Doc. 205 at 3).  Alternatively, TAS asserts that Cummins has put its own "ISF Plus System" on its products, rather than TAS' licensed system, and owes royalties to TAS under the License Agreement for the TAS technology that was thus not used.  (<u>TAS II</u>, 07-cv-1141, Doc. 205 at 13-16).

On March 18, 2009, Cummins filed the instant suit, seeking to have this Court: (1) dismiss TAS' suit in <u>TAS II</u>, (2) declare that the '703 and '469 patents are invalid, (3) declare the License Agreement void for patent misuse, (4) declare that TAS has engaged in patent misuse,[2] (5) declare that the '703 and '469 patents are unenforceable based on inequitable conduct, and (6) rescind the License Agreement

---

[2]     Patent misuse requires a showing that "the patentee has impermissibly broadened the 'physical or temporal scope' of the patent grant with anticompetitive effect."  <u>Windsurfing Intern. Inc. v. AMF, Inc.</u>, 782 F.2d 995, 1001 (Fed. Cir. 1986).

Cummins asserts that the License Agreement, because it requires Cummins to pay royalties past the expiration of the '703 and '469 patents, is "invalid as a matter of law under the doctrine of patent misuse which voids license agreements in which royalty payments accrue after the expiration of the licensed patents."  (Doc. 1 at 18).  In addition, Cummins claims that TAS' enforcement of the allegedly invalid patents has "improperly restrained competition and/or created an anticompetitive effect."  (Doc. 1 at 19).

It appears that patent misuse is only a defense to a patent-infringement claim, not an affirmative basis for relief.  J. Thomas McCarthy, <u>McCarthy's Desk Encyclopedia of Intellectual Property</u> 208 (1991) (<u>citing</u> <u>Windsurfing Intern.</u>, 782 F.2d at 1001).  However, in the interest of a thorough disposition, the Court will consider whether the patent misuse claim is barred by res judicata.

and the Master Agreement.  (Doc. 1 at 23-24).  The basis of Cummins' suit is the allegation that three alleged facts render the '703 and '469 patents invalid: products embodying the Temp-a-Start and/or Temp-a-Stop technologies were sold as early as 1986, more than one year prior to the 1991 and 1993 issuance of the '703 and '469 patents; the wrong inventor was named on the '469 patent;[3] and there is a gap in the chain of title between the inventor of the '703 patent's technology and TAS.[4] Each of these facts is alleged to have occurred prior to or during the process of obtaining the patents, which was prior to TAS I.

TAS opposes Cummins' claims on their merits, but also filed the instant Motion for Summary Judgment under the Doctrine of Res Judicata on May 12, 2009.  (Doc. 19).  TAS alleges that the doctrine of res judicata bars Cummins' suit,

---

[3]    Loran Sutton is named as the inventor of the subject matter of the '469 patent.  Cummins states that, in his Deposition on March 10, 2009, Mr. Sutton stated that he did not invent the microprocessor Temp-A-Start invention claimed in the '469 Patent.  (Doc. 20, Ex. 5 at 187:21-188:23).  TAS states Mr. Sutton's brother was not the inventor or co-inventor of the '469 patent, citing the errata of Mr. Sutton's March 10, 2009 deposition, which notes the correction that his brother "had designed a meter package for [Mr. Sutton] 2 years earlier," had written "a microprocessor display program, and that his "brother did not work on a Temp-a-Stop with Thermo King."  (Doc. 22, Ex. D).

[4]    More specifically, Cummins alleges that Loran Sutton, the inventor of the '703 patent, assigned the '703 Patent to Temp A Start, Inc. on October 16, 1990, and Thermo King Corporation assigned it to Trans-Pro, Inc. on October 25, 1993.  Thus, there is a three-year gap in the chain of title between Temp A Start, Inc. and Thermo King Corporation, such that Thermo King Corporation did not have any right to assign the '703 Patent to Trans-Pro, Inc., and, if Thermo King Corporation did not have any rights to assign to Trans-Pro, Inc., then Trans-Pro, Inc. did not have any rights to assign to TAS.  TAS disputes the allegation that there was a gap in the chain of title, asserting that "the '703 patent indicates on its face that the patent rights were assigned directly from Mr. Sutton to Thermo-King when the patent was issued."  (Doc. 19 at 14).

as Cummins could have raised these patent and contract issues in <u>TAS I</u>, as a defense or counterclaim.

## MOTION FOR LEAVE TO FILE SURREPLY

On September 4, 2009, Cummins filed a Motion for Leave to File a surreply to TAS' Reply to Cummins' Opposition to its Motion for Summary Judgment. (Doc. 23). TAS opposed this Motion. (Doc. 24). Cummins argues that it should be allowed to file a surreply because, in its Reply to Cummins' Opposition to its Motion for Summary Judgment, TAS made "significant misstatements regarding the appropriate legal standard for res judicata, inappropriately relied on dicta from otherwise irrelevant case law, and failed to acknowledge the importance of policy considerations when applying res judicata in Illinois courts. Additionally, TAS' Reply failed to provide any reasoning as to why a majority of Cummins' claims were barred by res judicata, and made inaccurate representations of United States Patent Law."[5] (Doc. 23 at 2).

The Motion for Leave to File a surreply is denied. In its support, Cummins argues that TAS has made legal mistakes in its Reply that Cummins must address. The Court is quite capable of determining the effect of these supposed misstatements of law on its own and does not require the assistance of Cummins'

---

[5]     Cummins also claims that TAS' Opposition to Cummins' Motion For Summary Judgment on Count <u>II</u> in <u>TAS II</u> "contained significant misstatements regarding the appropriate legal standard for res judicata, again inappropriately relied on dicta from otherwise irrelevant case law, and failed to place proper emphasis on policy considerations in the context of res judicata." (Doc. 23 at 2). Given that the surreply would be filed in the instant case, 09-cv-1096, any misstatements in <u>TAS II</u> that it seeks to address are irrelevant to the disposition of this Motion.

surreply in doing so.  Moreover, unlike some other courts,[6] this Court's Local Rules do not provide for the filing of a surreply in the summary judgment context.  See Ripmax Ltd. v. Horizon Hobby, Inc., 07-cv-2133, 2008 WL 4534068, *2-3 (C.D. Ill. Oct. 7, 2008).  Typically, a surreply is allowed where the moving party raises new factual or legal issues in its reply brief, in order to ensure that the non-moving party has an adequate chance to respond to the new issues.  Here, Cummins does not allege that new issues were raised that it seeks to respond to, but only that it objects to TAS' characterization of the law.  The Court finds that a surreply is not necessary in this case; Cummins' Motion for Leave to File is denied.

LEGAL STANDARD

## I.    Summary Judgment

Summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In ruling on a motion for summary judgment, the court must view the evidence on record in the light most favorable to the non-moving party.  SMS Demag Aktiengesellschaft v. Material Sciences Corp., 565 F.3d 365, 368 (7th Cir. 2009).  All inferences drawn from the facts must be construed in

---

[6]    For example, the Southern District of Indiana's Local Rule 56.1(d) provides: "If, in reply, the moving party relies upon evidence not previously cited or objects to the admissibility of the non-moving party's evidence, the non-moving party may file a surreply brief limited to such new evidence and objections, no later than seven days after service of the reply brief."  It is worth noting that, under this rule, Cummins would not be allowed to file a surreply, as its proposed surreply was filed on September 4, 2009, more than two months after TAS' reply.  In addition, in its reply, TAS did not rely on evidence it had not previously cited nor object to the admissibility of the Cummins' evidence.

favor of the non-movant; however, the court is not required to draw every conceivable inference from the record. <u>Smith v. Hope School</u>, 560 F.3d 694, 699 (7th Cir. 2009). The court draws only reasonable inferences. <u>Id</u>. If the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. <u>McClendon v. Indiana Sugars, Inc.</u>, 108 F.3d 789, 796 (7th Cir. 1997).

## II.    Res Judicata

Res judicata, modernly known as claim preclusion, prevents a party from bringing a suit to resolve a claim that could have been decided in a prior action between the same parties or their privies. The res judicata effect of a prior judgment by a federal court sitting in diversity is governed by "federal common law," which provides for the application of the law of the state in which the federal court sits. <u>Semtek International Inc. v. Lockheed Martin Corp.</u>, 531 U.S. 497, 508 (2001). Therefore, Illinois' res judicata law will apply, unless it "is incompatible with federal interests." <u>Id</u>. at 509.

ANALYSIS

## I.    Applicability of Res Judicata

Illinois requires that three requirements be met in order for res judicata to bar a subsequent suit: "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies."[7] <u>River Park, Inc. v. City of Highland</u>

---

[7]    Illinois recognizes that "[t]he purpose of res judicata is to promote judicial economy by requiring parties to litigate, in one case, all rights arising out of the same set of operative facts and also [to] prevent[ ] the unjust burden that would

<u>Park</u>, 703 N.E.2d 883, 889 (Ill. 1998).   As it is obvious that the first and third elements are met, neither TAS nor Cummins contest them.   (Doc. 19 at 8; Doc. 20 at 26-39).

In order to determine whether the two suits involve the same cause of action, Illinois applies a transactional test.   This test views a claim "in 'factual terms' and considered 'coterminous with the transaction, regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff;…and regardless of the variations in the evidence needed to support the theories or rights.'"   <u>Id</u>. at 892 (<u>quoting</u> Rest. 2d Judg. § 24, cmt. a (1982)) (alteration in original).   "[S]eparate claims will be considered the same cause of action for purposes of res judicata if they arise from a single group of operative facts, regardless of whether they assert different theories of relief."   <u>Id</u>. at 893 (<u>citing</u> <u>Rodgers v. St. Mary's Hosp. of Decatur</u>, 597 N.E.2d 616, 621 (Ill. 1992)). The res judicata "bar extends to what was actually decided in the first action, as well as those matters that could have been decided in that suit."   <u>Id</u>. at 889; <u>see also</u> <u>Corcoran-Hakala v. Dowd</u>, 840 N.E.2d 286, 290 (Ill. App. 2005) ("extends to all

---

result if a party could be forced to relitigate what is essentially the same case." <u>River Park</u>, 703 N.E.2d at 897 (<u>quoting</u> <u>Henstein v. Buschbach</u>, 618 N.E.2d 1042 (Ill. App. 1993) (alterations in original).   The doctrine arises from the "practical necessity that there be an end to litigation and that controversies once decided on their merits shall remain in repose."   <u>Hughey v. Industrial Commission</u>, 394 N.E.2d 1164, 1166 (Ill. 1979).   The federal policy supporting res judicata is similar: "The doctrine of res judicata minimizes 'the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.'"   <u>Alvear-Velez v. Mukasey</u>, 540 F.3d 672, 677 (7th Cir. 2008) (<u>quoting</u> <u>Montana v. United States</u>, 440 U.S. 147, 153-54 (1979)).

matters that were offered to sustain or defeat a claim in the first action, as well as to all matters that could have been offered").

Res judicata binds both parties to the earlier suit. Fuller Family Holdings v. Northern Trust Co., 863 N.E.2d 743, 755-56 (Ill. App. 2007); Corcoran-Hakala, 840 N.E. at 520. Even the party who was the defendant in the prior suit is barred from later bringing a claim against the former plaintiff if the later suit is "based on facts that would have constituted a counterclaim or defense in the earlier proceeding where successful prosecution of the later action would either nullify the earlier judgment or impair the rights established in the earlier action."[8] Corcoran-Hakala, 840 N.E.2d at 290 (quoting Cabrera v. First National Bank of Wheaton, 753 N.E.2d 1138, 1145 (2001)). See also Henry v. Farmer City State Bank, 808 F.2d 1228, 1235-36 (7th Cir. 1986) (former defendants barred from bringing claim that would have been complete defense to prior action); Purmal v. Robert N. Wadington and Assoc., 820 N.E.2d 86, 96-97 (Ill. App. 2004) ("she could have offered all of these matters in response to defendants' [earlier action] and is now barred from relitigating them here") (emphasis in original); Bernard Bros., Inc. v. Deibler, 100 N.E.2d 512, 516 (Ill. App. 1951) (later action by previous defendant barred by res judicata and "judicial policy against considering defenses piecemeal" where the claim asserted would have constituted a defense to earlier action; defendant

---

[8]     This is true even though a defendant in Illinois ordinarily may choose to bring a separate action for any claims he has against a plaintiff, rather than bringing them as a counterclaim to the plaintiff's action. Fuller Family Holdings, 863 N.E.2d at 755-56; Corcoran-Hakala, 840 N.E.2d at 293-94. The rule is sometimes referred to as a "common law compulsory counterclaim." Corcoran-Hakala, 840 N.E.2d at 293-94 (citing Carey v. Neal, Cortina and Assoc., 576 N.E.2d 220, 225 (Ill. App. 1991); REST. 2D JUDG. § 22(2)(b)).

"obligated to present or otherwise forfeit any existing defense relieving it from liability" in the earlier action).

The Court finds that Cummins' instant claims could have been asserted in TAS I, as they arise from the same core of operative facts, all of which existed prior to TAS I.  As noted above, TAS I involved TAS' claim that Cummins had violated the License Agreement by failing to adequately market the technologies as required in the License Agreement.  In that action, Cummins counterclaimed, alleging that its obligation to pay royalties under the License Agreement expired on March 31, 2003.  As noted by this Court in its Summary Judgment Opinion in TAS I, "[n]either party dispute[d] the validity of the contracts at issue in this case." (TAS I, 03-cv-1026, Doc. 36 at 7).

In River Park, the Illinois Supreme Court laid out several factors that are of use in deciding whether facts constitute a "transaction:" "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." River Park, 703 N.E.2d at 312.  The validity of the contracts was, though implicitly, an operative fact in TAS I.  Cummins certainly could have contested, as either a defense or a counterclaim, the validity of the contracts and the patents that it asserts underlie the contracts in TAS I, and if successful, Cummins' claims would have defeated TAS' suit in TAS I.[9]  River Park, 703 N.E.2d at 889.  These factual assertions are certainly related in time, space,

---

[9]    The invalidity of the patents and contracts, if shown, would have also resulted in a finding in Cummins' favor on its counterclaim, as the License Agreement would have been invalidated.

origin, and motivation to the breach of contract at issue in <u>TAS I</u>; they would have formed a convenient trial unit with <u>TAS I</u>'s factual issues; and a decision on the validity of the underlying contract would have conformed to standard expectations in a breach of contract dispute.

In addition, a finding for <u>TAS</u> in the instant case would "either nullify the earlier judgment or impair the rights established in the earlier action." <u>Corcoran-Hakala</u>, 840 N.E.2d at 290. The earlier judgment established that Cummins had a continuing duty to TAS under the License Agreement to pay per-unit royalties for products it sold that contained TAS technology. (<u>TAS I</u>, 03-cv-1026, Doc. 36 at 12). Clearly, if the License Agreement and the Master Agreement were void or if they had been breached by TAS such that they were rescinded, the Court would have found for Cummins on this matter; the Court's finding necessarily assumed that the Agreements were valid. Therefore, each of Cummins' claims in the instant case would, if proved, undermine the determination that Cummins owed royalties to TAS and TAS' rights under it. Most obviously, if successful, Cummins' claims (1) that the License Agreement is invalid as a matter of law under the doctrine of patent misuse because it requires royalties after the expiration of the patents; (2) that the Agreements are void for patent misuse because they are based on invalid patents; (3) that the Agreements were fraudulently induced because TAS had no rights in the patents; or (4) that the Court should rescind the Agreements because of TAS' breach of § 9 of the Master Agreement,[10] would nullify the earlier

---

[10]    Cummins argues that this breach of contract claim cannot be barred by res judicata, even if the claims of contract invalidity are barred. However, if Cummins had raised TAS' alleged breach of § 9 in <u>TAS I</u>, it would have constituted a defense

determination that Cummins had a duty to pay royalties to TAS under the License Agreement and would impair TAS' rights under that determination.   Cummins states, without explanation, that a finding in its favor in the instant suit would not nullify the Court's ruling in <u>TAS I</u>.  (Doc. 20 at 32 fn. 7).  The Court is not convinced -- the finding that Cummins owes royalties to TAS under the License Agreement cannot stand if the Agreements are invalid or rescinded.  As discussed below, Cummins' patent-based claims are also barred.

Cummins argues that the two suits do not concern the same "operative facts," as a second suit is not barred merely because it concerns the same contract at issue in an earlier suit.  In support of this argument, Cummins discusses two Illinois cases, <u>Saxon Mortgage, Inc. v. United Financial Mortgage Corp.</u>, 728 N.E.2d 537 (2000), and <u>Torcasso v. Standard Outdoor Sales, Inc.</u>, 626 N.E.2d 225 (1993).  It is true that the fact that two suits between the same parties concern the same contract does not necessarily mean that the second suit is barred.  However, Cummins' argument here does not succeed.

Cummins cites the fact that <u>TAS I</u> and the instant suit allege different bases for relief and rely on different evidence, with <u>TAS I</u>'s counts relating to what "Cummins did to promote the TAS technology, namely what steps Cummins took to develop and promote the TAS technology, and -- as has been litigated at length in

---

or counterclaim to TAS' suit against it under contract law.  Further, a finding in Cummins' favor that TAS breached § 9 would nullify the Court's decision in <u>TAS I</u>, as the only remedy Cummins seeks on that claim is rescission of the Agreements. (Doc. 1 at 23).  The fact that Cummins here seeks relief under a breach of contract theory does not prevent the application of res judicata.  <u>See</u> <u>River Park</u>, 703 N.E.2d at 895 ("[S]uits involving different theories of relief may constitute the same cause of action.").

the TAS v. Cummins II case -- whether Cummins could include its own idle shutdown technology on its engines."  (Doc. 20 at 30).  In contrast, Cummins asserts, the instant case "pertain[s] almost exclusively to TAS' actions, TAS' representations or misrepresentations, and TAS' obligations in licensing its technology to Cummins, as well as TAS' actions before the U.S. Patent and Trademark Office." (Doc. 20 at 31).  Cummins also asserts that the relevant actions were taken during different time periods, that the two suits involve separate clauses of the Agreements, and that the two suits seek different forms of relief.  All of this may be true, but the facts remain that the validity of the Agreements is the essential fact to both suits and that the TAS' alleged actions occurred prior to TAS I.  Thus, a finding in Cummins' favor here will result in the nullification of the Court's decision in TAS I.

In Saxon Mortgage, a federal court had granted summary judgment to the plaintiff in a breach of contract action.  The defendant to that action then sought to dismiss a state court suit by the same plaintiff under the doctrine of res judicata; arguing that, because these two suits originated from the same agreement, res judicata should bar the second.  The Illinois Appellate Court disagreed, finding that the two claims were distinct: the federal case concerned whether a mortgage loan's deficiencies "impinged on that loan's investment quality," while the state case concerned whether certain "loans were paid in full within 180 days after the loans were sold."[11]  728 N.E.2d at 543.  The cases involved the same contract, but

---

[11]  The Saxon Mortgage court also based its decision on an exception to the doctrine of claim-splitting.

concerned different sections of it -- neither case contested the contract's validity. Here, on the other hand, the instant suit questions the very validity of the Agreements that were at issue in TAS I. Rather than merely alleging breach of certain sections of the Agreements, Cummins here argues that the Agreements are invalid or should be rescinded. If brought successfully in TAS I, this claim would have constituted a complete defense to the suit; its successful resolution now would nullify the Court's earlier decision and TAS' rights under it.

Torcasso is likewise unhelpful to Cummins.[12] Torcasso, who had been the defendant in a prior action by Standard for payment of a leasing commission due under a contract, later sued Standard for breach of that same contract and fraud. The Illinois Appellate Court held that these were not the same cause of action, as the commission suit had relied on a lease procured by Standard in 1985, over a year after the events underlying Torcasso's breach of contract and fraud claims. Because the facts asserted in the later case would not have controlled the outcome of the prior case, the court held that the later case was not barred by res judicata. Torcasso, 626 N.E.2d at 229. Here, if Cummins' assertions in the instant suit are true, they would have controlled the outcome of TAS I, so Torcasso does not prevent the application of res judicata.

Further, the Seventh Circuit has also decided res judicata issues controlled by Illinois law, and has found that defendants to an earlier breach-of-contract action

---

[12]    It is notable that Torcasso was decided under Illinois' "same evidence" test for determining whether two cases constituted the same cause of action for res judicata purposes. This test was used simultaneously by the Illinois courts until River Park rejected the same evidence test and decided that only the transactional test would be used. 703 N.E.2d at 891-93.

cannot later bring an action that would void the contract.  In <u>Henry</u>, the Henrys, plaintiffs in a subsequent action in federal court, had been defendants to a prior state court foreclosure proceeding.  Illinois law provided that, where the Henrys sought in the second action to prove that the mortgage on which the prior foreclosure action had been based was fraudulent and forged, the second action was barred, because the fraud and forgery claims would have been a complete defense to the foreclosure action.  808 F.2d at 1234-36.  The Seventh Circuit noted that, under Illinois law, "[j]ust as the policies behind the doctrine of res judicata are designed to discourage the piecemeal litigation of claims, so are they designed to prevent the piecemeal presentation of defenses."  <u>Id</u>. at 1234 (<u>citing Bernard Bros.</u>, 100 N.E.2d at 516).  For the foregoing reasons, res judicata bars Cummins' contract-based claims in this action.

### A.    Application to Patent-Based Claims

On the other hand, Cummins argues that, even if these contract claims are barred by the decision in <u>TAS I</u>, its patent-invalidity claims are not.  This argument is unavailing.  The patent-invalidity claims are, in this case, part of the group of facts needed to prove the contract claims and are thus the same cause of action as <u>TAS I</u>.  <u>River Park</u>, 703 N.E.2d at 895 ("[A]ssertions of different kinds or theories of relief arising out of a single group of operative facts constitute but a single cause of action.") (quoting <u>Torcasso</u>, 626 N.E.2d at 228).  If Cummins had argued in <u>TAS I</u> that the Agreements were void because they are based on invalid patents, or that the Agreements were fraudulently induced, it would have had to prove that these patents were indeed invalid or unenforceable, either because of the three allegedly

patent-defeating facts or because of inequitable conduct before the U.S. Patent Office, in order to make that case. Under its own theory, all of Cummins' contract claims are based on the patent allegations; there are no contract claims without the patent claims. Therefore, in order to make any of its contract claims as a defense or counterclaim in <u>TAS I</u>, Cummins would have had to show that the patents were invalid or unenforceable; the showing that the patents were invalid would be a necessary part of a finding that the Agreements were unenforceable. Thus, Cummins' patent-based claims are also barred by res judicata.

## II. Exceptions to Res Judicata

Cummins also argues that there are three additional reasons that res judicata, even if ordinarily applicable in this situation, should not apply. First, Cummins argues that there is a "declaratory judgment exception" that prevents the application of res judicata to its suit. Second, Cummins argues that Illinois law recognizes a "misrepresentation exception" to res judicata. Cummins also argues that federal policy requires the adjudication of its instant patent claims on the merits. None of these prevents the application of the res judicata bar to this case.

### A. "Declaratory Judgment Exception"

Cummins argues that, under the "declaratory judgment exception," res judicata is inapplicable to any findings made pursuant to Cummins' counterclaim in <u>TAS I</u>. There are several problems with this argument. First, <u>Allen Block v. County Materials Corporation</u>, the case cited by Cummins for the "declaratory judgment exception," arose under federal res judicata law. As discussed above,

Illinois' res judicata law governs the preclusive effect of the TAS I decision, as it was decided by this Court under Illinois law.

In Illinois, it appears that there is no "declaratory judgment exception."  In Mandarino v. Pollard, the Seventh Circuit noted that the Illinois courts do not appear to have adopted this exception.  718 F.2d 845, 847-49 (7th Cir. 1983).  The plaintiff in that case argued that the exception should allow him to bring a later suit in federal court, after having sought declaratory judgment and injunctive relief in state court on the same cause of action.  In support of this argument, he cited to the Restatement (Second) of Judgments § 33, comment c, which provides for such an exception where the only relief sought by the plaintiff in the earlier suit was declaratory judgment; he cited no Illinois authority.[13]  As in Mandarino, Cummins cites no Illinois authority adopting the "declaratory judgment exception," and the Court has found none.   Indeed, in Philips Electronics, N.V. v. New Hampshire Insurance Company, the Appellate Court of Illinois had the opportunity to apply the "declaratory judgment exception" but did not do so, instead upholding the res judicata effect of a prior declaratory-judgment-only action.  728 N.E.2d 656, 664-65 (Ill. App. 2000).

---

[13]      The Court also notes that the first Restatement of Judgments § 77, comment b, indicates a "declaratory judgment exception."  Only one Illinois case cited this section of the first Restatement, and that case did not adopt the exception, but merely noted that a declaratory judgment "would have made 'res judicata the matters declared by the judgment, thus precluding the parties to the litigation from relitigating these matters.'"  Williams v. Madison County Mut. Auto. Ins. Co., 240 N.E.2d 602, 604 (Ill. 1968) (quoting REST. JUDG. § 77, cmt. b.).  This describes the ordinary collateral estoppel effect of a declaratory judgment discussed infra, footnote 14, and does not constitute an acceptance of the "declaratory judgment exception."

Even if the "declaratory judgment exception" were part of Illinois law, though, it would not be applicable to this case under its own terms.[14]  The Seventh Circuit held that "there is an exception to res judicata for cases in which the <u>only</u> relief sought in the first suit is a declaratory judgment."  <u>Allen Block</u>, 512 F.3d at 916 (emphasis added).  This is because of the rationale of the rule: to allow a plaintiff who seeks a declaratory judgment and wins to later file a second suit to enforce the rights established by the declaratory judgment.  <u>Id</u>.  The rule also applies to allow the party who was the defendant to an earlier declaratory-judgment-only suit to later file a second suit with related claims, because to bar the defendant's later suit would allow declaratory judgments to "become devices for thwarting the choice of forum by defendants."  <u>Id</u>.  That is, without the rule, plaintiffs would preemptively seek declaratory judgments when and where they

---

[14]    TAS also argues that the "declaratory judgment exception" is inapplicable to this case because <u>Allen Block</u> notes that "if specific issues are resolved in the declaratory judgment action, their resolution will bind the plaintiff by virtue of the doctrine of collateral estoppel."  TAS argues that the Court's decision on Cummins' counterclaim in <u>TAS I</u> necessarily <u>determined</u> that the Agreements were valid.

The Court agrees that <u>TAS I</u>, both for purposes of TAS' claims and Cummins' counterclaims, assumed that the Agreements were valid, and that a determination that the Agreements were invalid would nullify <u>TAS I</u>.  It does appear that, under Illinois law, collateral estoppel might bar re-litigation of the question of contract validity, as it applies when "(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication."  <u>Talarico v. Dunlap</u>, 685 N.E.2d 325, 328 (Ill. 1997).  All of these seem to be present.  It is, however, "absolutely necessary that there shall have been a finding of a specific fact in the former judgment or record that is material and controlling in that case and also material and controlling in the pending case."  <u>Kessinger v. Grefco, Inc.</u>, 672 N.E.2d 1149, 1156 (Ill. 1996).  As the decision in <u>TAS I</u> did not specifically find that the agreements were valid, the Court does not wish to base its decision on this issue on collateral estoppel.

chose, and defendants would be forced to bring any claims at that time and place. In this case, TAS, the prior plaintiff, sought "damages for Cummins' alleged breach of the License Agreement, a declaratory judgment that Cummins breached its obligations under the Licens[e] Agreement, and specific performance of the License Agreement by Cummins." (TAS I, 03-cv-1026, Doc. 36 at 6). TAS I obviously dealt with more than only a declaratory judgment, so Allen Block and the "declaratory judgment exception" are inapplicable.[15]

## B.   Misrepresentation Exception

Cummins asserts that Illinois law recognizes an exception to res judicata "where there was an omission due to ignorance, mistake, or fraud, or where it would be inequitable to apply the rule." (Doc. 20 at 32 (quoting Thorleif Larsen and Son, Inc. v. PPG Industries, Inc., 532 N.E.2d 423, 427 (Ill. App. 1988). TAS agrees that such an exception exists, but argues that it is inapplicable to this case.

---

[15]    To the extent TAS is claiming that because its only counterclaim was for declaratory judgment, the "declaratory judgment exception" applies, this argument is off the mark. Such an interpretation would turn Allen Block on its head -- it would allow defendants to prevent the future application of res judicata merely by counterclaiming for declaratory judgment. The purposes of the exception, as discussed above, are to allow a victorious declaratory-judgment plaintiff to later sue to enforce his rights under the declaratory judgment, and to prevent plaintiffs from "thwarting the choice of forum by the defendant" by filing declaratory-judgment-only complaints at the time and place of their choosing. Allen Block, 512 F.3d at 916. They do not apply where, as here, the prior plaintiff brought claims for damages and specific performance, as well as a claim for declaratory judgment.

The Court has found no Illinois cases that <u>discuss</u> the "misrepresentation" aspect of this exception, which is also stated in the Restatement (Second) of Judgments § 26, comment j.[16]  Both parties cite this comment, which instructs that

> A defendant cannot justly object to being sued on a part or phase of a claim that the plaintiff failed to include in an earlier action because of the defendant's own fraud….The result is the same when the defendant was not fraudulent, but by an innocent misrepresentation prevented the plaintiff from including the entire claim in the original action….The result is different, however, where the failure of the plaintiff to include the entire claim in the original action was due to a mistake, not caused by the defendant's fraud or innocent misrepresentation.

REST. 2D JUDG. § 26, cmt. j (1982).

The case cited by Cummins, <u>Thorleif Larsen</u>, did not apply the misrepresentation aspect, but relied on the fact that the defendant had previously acquiesced to the plaintiff's splitting his claim.   532 N.E.2d at 427.   Likewise, <u>Adams v. Pearson</u>, which is the case that is cited by <u>Thorleif Larsen</u>, while using the "ignorance, mistake, or fraud" language, found that res judicata should not bar the victor in a previous suit for possession of a farm from later suing for a decree

---

[16]     The Illinois Supreme Court summarized the Restatement (Second) of Judgments § 26 in <u>Rein v. David A. Noyes & Co.</u>: "This section provides that the rule against claim-splitting does not apply to bar an independent claim of part of the same cause of action if: (1) the parties have agreed in terms or in effect that plaintiff may split his claim or the defendant has acquiesced therein; (2) the court in the first action expressly reserved the plaintiff's right to maintain the second action; (3) the plaintiff was unable to obtain relief on his claim because of a restriction on the subject-matter jurisdiction of the court in the first action; (4) the judgment in the first action was plainly inconsistent with the equitable implementation of a statutory scheme; (5) the case involves a continuing or recurrent wrong; or (6) it is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason."  665 N.E.2d 1199, 1207 (Ill. 1996) (<u>citing</u> REST. 2D JUDG. § 26).  None of these are specifically alleged by Cummins to be present.  However, several courts seem to analyze the "ignorance, mistake, or fraud" language along with (6).

ordering the loser to convey title to the farm to him.  104 N.E.2d 267, 270-72 (Ill. 1952).  The other Illinois cases the Court has discovered that cite § 26 of the Restatement or the "ignorance, mistake, or fraud" exception are similarly unhelpful. See, e.g., Rein v. David A. Noyes & Co., 665 N.E.2d 1199, 1207-08 (Ill. 1996) (no grounds alleged to apply exception); Saxon Mortgage, 728 N.E.2d at 545-46 (parties had agreed to allow claim splitting); Best Coin-Op, Inc. v. Paul F. Ilg Supply Co., Inc., 545 N.E.2d 481, 495 (Ill. App. 1989) (conduct by party seeking to bar suit amounted to acquiescence to claim splitting); Bank of Tokyo Trust Co. v. Aurora Market Place, Ltd., 1993 WL 462840, *6-7 (N.D. Ill. 1993) (party seeking to bar suit had "effectively acquiesced" to splitting of claim).  No Illinois cases appear to even cite § 26, comment j, quoted above.

A few other jurisdictions have discussed § 26, comment j in their cases, and their applications of the rule are illustrative.  In Blake v. Charleston Area Medical Center, the Supreme Court of Appeals of West Virginia held that the rule of § 26, comment j prevented the application of res judicata.  498 S.E.2d 41, 49-51 (W. Va. 1997).  Defendants had previously sued and recovered from plaintiffs (who may have been unrepresented at the time) for medical expenses that were, under an agreement with plaintiffs' insurer, to have been considered paid in full; defendants sought additional payment from plaintiffs but did not disclose the existence of this agreement with the insurer until more than a year after judgment in the first action.  Id. at 44-45.  There was nothing to inform the plaintiffs that they may not have been liable for the expenses.  The District Court for the District of Minnesota did not apply res judicata as to one plaintiff in Livingston v. ITT Consumer

<u>Financial Corporation</u>, where the defendant seeking res judicata had engaged in forgery, made false records, and destroyed records, and the plaintiff was thus not aware that he might have a certain claim against the defendant.  795 F.Supp. 921, 924 (D. Minn. 1992).  However, it did apply res judicata as to a second plaintiff, in spite of the dishonest conduct of the defendant, where that plaintiff knew that she might have a claim.  <u>Id</u>. at 924-25.

A Massachusetts Appeals Court rejected a plaintiff's claim that res judicata should not bar his suit, though he claimed that the defendant "deliberately concealed [its insurer's] conflict of interest."  <u>Gloucester Marine Ry. Corp. v. Charles Parisi, Inc.</u>, 631 N.E.2d 1021, 1025 (Mass. App. 1994).  The court noted that "there [was] nothing in the record that demonstrates that [the plaintiff] was prevented by [the defendant] or anyone else from acquiring this knowledge through discovery in the [first] action," as the plaintiff was on notice prior to the first trial that the same attorney had represented two involved insurers.  <u>Id</u>.  Finally, in <u>Hartnett v. Billman</u>, the Fourth Circuit held that, given certain disclosures to the plaintiff before and during the prior suit, it was "impossible to say that any concealment or fraud by [defendants], even if they existed, acted to prevent the assertion of [plaintiff's] fraud claim during the pendency of <u>Harnett I</u>."  800 F.2d 1308, 1313-14 (4th Cir. 1986).  These disclosures were of information that should have put the plaintiff on notice that defendants' business was not what they said it was, such that the plaintiff should have sought to raise the issue in the first litigation.

In support of its argument that this exception should apply, Cummins asserts that "TAS affirmatively represented to Cummins that its patents were valid and

that TAS was entitled to license the patents to Cummins," though it knew that the 1986 sales of Temp-a-Start products would defeat the '703 and '469 patents, that a gap in the chain of title exists as to the '703 patent, and that Mr. Sutton's brother invented the technology of the '469 patent.  (Doc. 20 at 34).  Cummins points to § 9 of the Master Agreement as one proof of this misrepresentation, as well as Mr. Sutton's alleged failure to inform the U.S. Patent Office of these facts, and Mr. Sutton's deposition testimony in <u>TAS I</u>.

TAS agrees that such a misrepresentation exception exists but denies that it made any misrepresentations or that it hid information from Cummins.  TAS argues that Cummins was informed of the 1986 sales of the Temp-a-Start product prior to execution of the Agreements and that it was again informed of these sales during the <u>TAS I</u> litigation.[17]  In support of this contention, TAS offers the minutes of an October 22, 1996, meeting between itself and Cummins, taken by Cummins' Ross Berryhill.  These minutes, the authenticity of which Cummins does not dispute, state that "TAS has been in production with variants of the system since 1985, and have [sic] shipped 3000-4000 units."  (Doc. 19, Ex. F at "Field Experience").  In addition, during <u>TAS I</u>, Mr. Sutton testified in a deposition that Temp-a-Start was first sold around 1986.  (Doc. 19, Ex. I at 11:2-6).  TAS also argues that there is no break in the chain of title to the '703 patent and that Mr. Sutton's brother did not in fact invent the technology of the '469 patent; TAS asserts, in addition, that no information regarding these facts was ever hidden from Cummins, but was freely discoverable during <u>TAS I</u>.  As TAS states, "[a]ny evidence

---

[17]    TAS denies that these prior sales defeat the patents' validity or that of the Agreements.

that Cummins needed to pursue these claims in <u>TAS I</u> was available to be discovered in that case." (Doc. 19 at 15).

The Court is not convinced, even when all the evidence is viewed in the light most favorable to Cummins, that TAS has made any misrepresentations that prevented Cummins from including its contract and patent invalidity claims in <u>TAS I</u>. The primary "misrepresentation" Cummins claims is embodied in § 9 of the Master Agreement -- Cummins cites the following language for support:

> (a)…TAS hereby represents and warrants that TAS is the sole and exclusive owner and/or licensee of the Subject Technology and Related Intellectual Property, and that TAS has the unconditional right and authority to grant Cummins the rights and licenses, and to make the undertakings, set forth in the Agreements. …
> (c) TAS [also] represents and warrants that…no claim, action, lawsuit, arbitration, investigation, or administrative proceeding related to the Subject Technology or Related Intellectual Property…has been instituted by or against TAS, nor has any court, arbitral panel, or government agency issued any order, judgment, or decree relating to the Subject Technology, Related Intellectual Property, or TAS's design, development, engineering, testing, installation, application, manufacture, distribution, advertising, or sale of the
> Products. TAS further represents that, after a diligent investigation, TAS does not know or have reason to know of any basis for any such claim, action, lawsuit, arbitration, investigation, or administrative proceeding, or order; judgment, or decree."

(Doc. 20 at 34 (<u>quoting</u> Doc. 19, Ex. C at 6) (omissions in Cummins' quotation)). Cummins argues that this language is an "affirmative misrepresentation by TAS that it had the authority to license the '703 and '469 patents to Cummins. Further, TAS warrants…that it was unaware of any basis for which such a suit could be brought." (Doc. 20 at 34). Cummins reasons that, because TAS allegedly knew that the three bases of Cummins' claim that the patents are invalid existed at the time of contracting, its assertions that it had the right to license the technology and that

it did not know of any basis for a claim against the technology were misrepresentations.

Even assuming that Cummins' factual allegations regarding the patents' validity are true, and that TAS knew in 1997 that the patents were subject to attack, § 9 does not constitute a "misrepresentation" that caused Cummins to fail to include its contract and patent claims in <u>TAS I</u>, such that res judicata is inapplicable. The language of § 26, comment j,[18] and the cases of <u>Blake</u>, <u>Livingston</u>, <u>Gloucester Marine Ry. Corp.</u>, and <u>Hartnett</u> show that, even if the party seeking the application of res judicata made some misrepresentation to the other party, the § 26, comment j exception applies only if the misrepresentation <u>caused</u> the other party's failure to include the claim in the earlier case.[19]  It does not apply if the other party was on notice that there could be a claim, as a party still has its own duty to make its own case.  Only where there is no way that the party wishing to

---

[18]   As noted above, § 26, comment j provides that res judicata applies "where the failure of the plaintiff to include the entire claim in the original action was due to a mistake, not caused by the defendant's fraud or innocent misrepresentation."  REST. 2D JUDG. § 26, cmt. j.

[19]   Cummins states that "TAS cannot credibly state that it informed Cummins of the invalidity of its patent claims while at the same time affirming in Section 9 of the Master Agreement that TAS knew of no facts to call the patents' validity into question."  (Doc. 20 at 33).  The issue is not whether TAS "informed Cummins of the invalidity of its patent claims," it is whether TAS made a misrepresentation that caused Cummins' failure to contest the validity of the patents and the Agreements in <u>TAS I</u>.  As TAS contests the assertion that its patents are invalid, it would be absurd for it to "inform" Cummins that they are invalid.  As discussed above, however, TAS did inform Cummins of the key fact that Cummins relies on to allege that the patents are invalid, and this is sufficient to allow the application of res judicata.

avoid res judicata could have realized that it had a claim will the § 26, comment j exception apply.

As Cummins acknowledges, it was told of the 1986 sales of the Temp-a-Start products in October of 1996, and Mr. Berryhill memorialized this revelation in his minutes.[20] (Doc. 19, Ex. F). Thus, Cummins was on notice well prior to contracting and to <u>TAS I</u> that the patented technology had been sold prior to the issuance of the patents. In addition, during <u>TAS I</u>, Mr. Sutton was deposed by Cummins, and testified that Temp-a-Start was first sold in 1986. (Doc. 19, Ex. I at 11:2-6). These disclosures vitiate any claim by Cummins that TAS' § 9 assertions caused it to fail to investigate the validity of the patents. Cummins had a duty of due diligence in entering into the agreement and in defending <u>TAS I</u>, and could not close its eyes to the possibility, revealed by the 1986 sales, that the patents might be subject to doubt. <u>Hughey v. Industrial Commission</u>, 394 N.E.2d 1164, 1166 (Ill. 1979) ("[Res judicata] applies to every question relevant to and falling within the purview of the original action, in respect to matters of both claim or grounds of recovery, and defense, <u>which could have been presented by the exercise of due diligence</u>.") (emphasis added). As TAS notes, if any misrepresentation in a contract were

---

<sup>20</sup> Cummins attempts to create a genuine issue of material fact by stating that it was not "aware (or should have been aware) of the patent-defeating nature of TAS' 1985-1986 Temp-a-Start sales." (Doc. 20 at 5). In addition, it states that Mr. Sutton's deposition testimony is not "evidence that Cummins had full knowledge of the patent defeating effect" of the prior sales. (Doc. 20 at 7-8). This is unavailing, however. As Cummins does not contest that it knew of the prior sales, whether it knew of the legal effect of this fact is immaterial, as a matter of law, to whether it should have brought its current claims in <u>TAS I</u>. As explained above, enough facts were revealed to Cummins that it should have, with due diligence, discovered prior to or during <u>Cummins I</u> that it may have a claim against the validity of the patents, against the validity of the contracts, and that TAS breached § 9.

sufficient to invoke § 26, comment j's rule, no fraudulent misrepresentation claim based on statements in a contract could ever be barred under res judicata by a prior ruling on that contract.

Thus, when Cummins was accused of breaching its contract with TAS in <u>TAS I</u>, Cummins should have taken advantage of the opportunity for discovery of information relevant to the patents' validity.  This discovery in <u>TAS I</u> should have also included information on the supposed inventorship of the '469 patent and the chain of title to the '703 patent, the other two bases of Cummins' current claim that the patents are invalid.  Cummins does not assert that TAS prevented its discovery on these issues during <u>TAS I</u>, only that it chose not to raise them because it was relying on TAS' "misrepresentations."

Further, Cummins alleges that "TAS represented the validity of its patents to Cummins by virtue of its actions" before the U.S. Patent Office.  (Doc. 20 at 35).  It asserts that Mr. Sutton failed to disclose to the Patent Office the facts of the 1986 Temp-a-Start sales and that his brother invented the '469 patent.[21]  Whatever Mr. Sutton may have failed to disclose to the Patent Office, and whatever effect this might have had on the actual validity of the patents, this did not constitute a "misrepresentation" to Cummins that caused it to fail to contest the validity of the patents and the Agreements in <u>TAS I</u>, as <u>TAS</u> itself knew of the 1986 sales.  In addition, Cummins asserts that Mr. Sutton, in his deposition in <u>TAS I</u>, "claimed the 1986 Temp-a-Start was patented (by then existing patents, as opposed to being

---

[21]    As noted above, TAS disputes that Mr. Sutton's testimony reveals that his brother is the inventor of the '469 patent.

covered by patents filed several years later)." (Doc. 20 at 36). This characterization of Mr. Sutton's testimony is plainly untrue. Mr. Sutton did not say that the 1968 Temp-a-Start was already patented in 1986, but rather that he did not remember when the patent for that technology was obtained. (Doc. 22, Ex. B at 11:11-12). There is no way that this could be a "misrepresentation" to Cummins.[22] Therefore, the misrepresentation exception to res judicata is inapplicable to this case.

### C.      Federal Policy

Cummins argues, finally, that there exists a federal policy in favor of determining the validity or invalidity of patents, and that this policy should prevent the application of res judicata to its patent claims.[23] In support of this contention, Cummins cites Kraly v. National Distillers and Chemical Corp., in which the Seventh Circuit indeed noted "the public interest in obtaining a judicial determination of the invalidity of a worthless patent," and that "federal law requires that all ideas in general circulation be dedicated to the common good unless they are protected by a valid patent," such that "this federal policy prevails over the 'technical requirements of contract doctrine.'" 502 F.2d 1366, 1369 (7th

---

[22]    Finally, Cummins argues on this point that TAS has engaged in "dilatory and improper discovery tactics to further conceal the nature of the TAS technology." (Doc. 20 at 36). Notably, though, this alleged misconduct occurred during TAS II, not during TAS I -- what is at issue here is whether any misrepresentations by TAS prevented Cummins from including its patent and contract invalidity claims in TAS I. The events of TAS II are irrelevant to this question.

[23]    TAS contends that federal patent policy is inapplicable to the res judicata effect of TAS I, as that is to be decided under Illinois law. Semtek does provide that Illinois law should ordinarily determine the effect of TAS I -- unless it "is incompatible with federal interests." Semtek, 531 U.S at 509. If federal patent policy requires a decision on the merits in this case, then Illinois' res judicata law would be incompatible with that requirement, and must be set aside by this Court.

Cir. 1974) (<u>citing</u> <u>Lear, Inc. v. Adkins</u>, 395 U.S. 653, 668, 670 (1969)).  Because of this policy, the Seventh Circuit allowed National Distillers, whose predecessor had previously entered a consent decree with Kraly in which it agreed not to contest the validity of Kraly's patent, to challenge the validity of the patent.  <u>Id</u>. at 1369.  As Cummins acknowledges, this holding was later limited to the situation in which the consent decree acknowledges only that the patent is valid (rather than one that also acknowledges infringement) in <u>American Equipment Corporation v. Wikomi Manufacturing Company</u>.  630 F.2d 544, 546-47 (7th Cir. 1980).

In <u>Wikomi</u>, the Seventh Circuit revisited the issue of what res judicata effect should be accorded to consent decrees in patent infringement litigation, and found that federal patent policy justified the limitation of <u>Kraly</u> to the situation in which a consent decree states only that a patent is valid.  630 F.2d at 547-49.  Because the defendant in an infringement suit will have little incentive in settlement negotiations to contest the validity of a patent if he is not infringing (because it is easier for him to prove that he is not infringing), <u>Kraly</u>'s rule allows the later disposition of the patent's validity.  <u>Id</u>. at 546-47.  However, the defendant in an infringement suit who <u>does</u> admit infringement in a consent decree will have had more incentive to contest the validity of the patent, so the admission of validity in such a decree "is more likely to be genuine," and such that "the recital of validity in a consent decree which includes a finding of past infringement is less likely to validate invalid patents than the same recital in a decree which does not address the issue of infringement."  <u>Id</u>. at 547 (<u>quoting</u> Comment, <u>Res Judicata Effect of</u>

<u>Consent Judgments in Patent Litigation</u>, 18 B.C. Indus. & Com. L. Rev. 66, 95-96 (1976)).

Here, of course, <u>TAS I</u> was a prior judicial decision, not merely a consent decree, and so it is entitled to even greater res judicata effect.  Cummins has cited no authority for the proposition that federal patent policy requires that a final decision by a court, such as that in <u>TAS I</u>, not be given full res judicata effect.  Indeed, as shown by <u>Wikomi</u>, this policy does not even avoid res judicata for all consent decrees.  Therefore, federal patent policy does not prevent the application of res judicata to this case.[24]  In addition, the reasons given in <u>Wikomi</u> for foreclosing relitigation of the patent-validity issue are equally applicable here -- it is "not only consistent with but is also the most effective way to enforce the <u>Lear</u> policy of facilitating competitive access to ideas."  <u>Id</u>. at 548.

The Seventh Circuit first found that applying res judicata would "encourage earlier and more vigorous challenges to the validity of patents," as, "[i]f they were given a second chance to litigate the issue of validity, alleged infringers might well accept a license under a consent decree and forego an attack on validity until favored by a stronger financial position, or until threatened by other manufacturers who were not paying royalties."  <u>Id</u>. at 548 (<u>quoting</u> <u>Schlegel Manufacturing Co. v.</u>

---

[24]      In addition, in <u>USM Corporation v. SPS Technologies</u>, the Seventh Circuit chose not "to create an exception to <u>Wikomi</u> for cases where the patent is alleged not merely to be invalid but to have been procured by fraud on the Patent Office."  694 F.2d 505, 508 (7th Cir. 1982).  An exception to res judicata in such a situation, "rather than deterring patent fraud, would reduce the incentive of an infringer to prove fraud when first sued; he would have nothing to lose by biding his time until the terms of the settlement became onerous to him."  <u>Id</u>.  Thus, even though Cummins alleges that TAS committed misconduct before the U.S. Patent Office, this allegation will not avoid the res judicata effect of <u>TAS I</u>.

USM Corp., 525 F.2d, 775, 781 (6th Cir. 1975).  This rationale is applicable here, as in <u>TAS I</u>, Cummins was content to assume the validity of the patents, which enabled it to continue to benefit from them; now that Cummins again finds itself a defendant in a suit by TAS, it has decided to bring an action to find them, and the Agreements, invalid.  Application of res judicata here both encourages early patent disposition and conserves judicial resources.  <u>Id</u>. at 548-49.  In addition, as in <u>Wikomi</u>, "the strong interest in voiding meritless patents will be adequately protected" though res judicata is applied against Cummins, as third parties are still able to challenge the patents.  <u>Id</u>. at 549.  Therefore, federal patent policy does not prevent the application of res judicata.

CONCLUSION

As they could have, and should have, been litigated in <u>TAS I</u>, res judicata bars Cummins' claims in this case against TAS, and none of the exceptions to res judicata apply to prevent its application.  Therefore, TAS' Motion for Summary Judgment (Doc. 18) is GRANTED.  Further, Cummins' Motion for Leave to File a surreply (Doc. 23) is DENIED, and TAS' Motion to Stay Discovery (Doc. 26) is DENIED AS MOOT.

CASE TERMINATED.


Entered this <u>30th</u> day of November, 2009.


s/ Joe B. McDade<br>_____<br>JOE BILLY McDADE<br>United States District Judge